UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LUCIA SLOAN,<br><br>              Plaintiff,<br><br>v.<br><br>COUNTRY PREFERRED INSURANCE COMPANY,<br><br>              Defendant. | Case No. 2:12-cv-01085-APG-PAL<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. Nos. 34, 35) |

## I. BACKGROUND

The parties are well aware of the factual and procedural background of this case, and the Court's holding does not depend on a detailed analysis of which facts are in genuine dispute. A relatively brief summary of the case is therefore sufficient.

On April 5, 2011, plaintiff Lucia Sloan was in a car accident with third-party Jesús Martínez-Ramírez.[1] Sloan alleges various shoulder and spinal injuries as a result. Shortly after the accident, Martínez-Ramírez's insurer paid its policy limit of $15,000 and defendant Country Preferred Insurance Company ("Country"), Sloan's insurer, paid $25,000 for medical expenses.

On January 10 and 12, 2012, Country's claims adjuster Roseanna Foy exchanged several e-mails with Country's in-house claims attorney Pete Bangay.[2] Bangay indicated his belief that Sloan's claim "will likely end up in litigation," and he stated his desire to retain defense counsel Rebecca L. Mastrangelo as soon as possible to help select a medical expert with whom she would be comfortable working.[3]

---

[1] The Court refers to the April 5, 2011 accident as the "Subject Accident."

[2] (Dkt. No. 34-2.)

[3] (*Id.*)

On January 17, 2012, Sloan demanded $250,000 in underinsured motorist ("UIM") benefits from Country.[4] Following the Subject Accident, she had obtained medical treatment in the form of MRIs, x-rays, steroid injections, shoulder surgery, and EMG/nerve conduction studies. One of her doctors recommended a more invasive procedure—either a plasma disc decompression or a "fusion."[5] Sloan attached some of the related medical records to her demand letter. In the letter, she listed past special damages of $114,000, a past wage loss of $13,000 and an estimated cost for future spinal surgery of $78,000.[6]

On February 1, 2012, Country retained Dr. Derek Duke as its medical expert.[7] Country attached the January 10 and 12 e-mails between Foy and Bangay to the engagement letter sent to Dr. Duke. Country forwarded to Dr. Duke Sloan's medical records and bills, and informed him of her past medical history. Notably, Sloan was in a car accident in 2008 (the "Prior Accident").[8] She was treated for spinal injuries, and Country paid the UIM policy limit for the Prior Accident. Apparently in reference to the Prior Accident and possibly some other accident(s), Foy stated in the engagement letter to Dr. Duke: "[w]e question the fact that [Sloan] is not injured when she is at fault for a loss, even though cervical injuries are most common in rear-enders." Country asked Sloan to provide his expert opinion as to whether and to what extent the Subject Accident caused Sloan's claimed injuries.

On February 8, 2012, Foy allegedly prepared an "Injury Settlement Worksheet" (the "Worksheet"), which indicated that Country intended to deny Sloan's UIM claim. Sloan contends Country's preparation of the Worksheet before receipt of Dr. Duke's report indicates Country's bad faith in predetermining Sloan's claim.

---

[4] (Dkt. No. 34-3.)

[5] (Dkt. No. 36-3 at 26.)

[6] The parties dispute whether Sloan was cooperative in providing the related films (x-rays and MRIs), but that issue is immaterial to the resolution of the pending motions.

[7] (Dkt. No. 34-4.)

[8] (Dkt. No. 39-4.)

On February 20, 2012, Dr. Duke sent his report to Country.[9] The report implies that Dr. Duke physically examined Sloan, although he only reviewed her medical records.

On March 2, 2012, Country offered $105,000 to settle Sloan's claim.[10] Country based this figure on Dr. Duke's report, its review of Sloan's medical records, its knowledge of Sloan's accident history, and the alleged lack of change in Sloan's spine (as seen by comparing MRIs following the Prior Accident and the Subject Accident). Country offset $40,000 for the payments previously made to Sloan, meaning that the actual net offer was $65,000.

On March 8, 2012, Sloan demanded a "breakdown" of the $65,000 offer and expressed "great concerns" about Country's reliance on Dr. Duke's report, primarily because he incorrectly implied that he had physically examined Sloan.[11] Country refused to provide any further detail about the bases of the $65,000 figure.[12]

On May 9, 2012, Dr. Hyun Bae performed cervical disk replacement surgery on Sloan.[13] In the weeks prior, Sloan had communicated her intent to obtain this surgery, and provided Country with written authorization to obtain her medical records from Dr. Bae.

On May 14, 2012, Sloan's renewed demand for the $250,000 UIM policy limit "expired." Three days later she filed suit in Nevada state court, pleading three claims for relief: (1) breach of contract; (2) tortious breach of the covenant of good faith and fair dealing ("bad faith"); and (3) unfair claims practices in violation of NRS § 686A.310(1)(f) and (n).

On June 25, 2012, Country removed the case. On October 29, 2012—the initial expert disclosure deadline—Sloan produced records of her April 12, 2012 examination with Dr. Bae at which he recommended spinal surgery.[14] Dr. Bae stated: "[i]t is certainly not traumatic, but I do think that it is irritating the C7 root and often causing the continued pain, and an injury to the C7

---

[9] (Dkt. No. 34-5.)
[10] (*Id.*)
[11] (Dkt. No. 34-7.)
[12] (Dkt. No. 34-8.)
[13] (Dkt. No. 36-3 at 35–36.)
[14] (Dkt. No. 36-3 at 33.)

root."[15] It is unclear, however, if "not traumatic" refers to all of Sloan's spinal injuries or to only the injury described in the preceding sentence: "foraminal stenosis."[16]

During the end of 2012 and the beginning of 2013, Bangay, Sloan, Dr. Duke, Dr. Bae, James P.C. Silvestri (Country's insurance claims expert), and Boyd Veenstra (Sloan's insurance claims expert) were deposed. As explained below, the Court disregards all of these depositions because none was properly authenticated.

On March 21, 2013, Sloan received copies of Dr. Duke's "job materials," excluding privileged materials.[17] The next day, Sloan filed an amended notice of her intent to introduce those "job materials" into evidence at trial.

On April 2, 2013, Country tendered the $250,000 UIM policy limit to Sloan. In its moving papers, Country contends it made this decision because of Dr. Bae's deposition testimony as to causation. That testimony was the first time, Country argues, that Dr. Bae linked the Subject Accident to the surgery he performed. On the other hand, Sloan argues that Country's change of tune stemmed from its realization that evidence of its "bad faith" claims handling behavior would come out at trial.

Country has moved for summary judgment on all three of Sloan's claims, and Sloan has moved for summary judgment on only the statutory unfair practices claim.[18] For the reasons set forth below, the Court grants Country's motion and denies Sloan's motion.

## II. ANALYSIS

### A. Legal Standard — Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is

---

[15] (*Id.*)
[16] (*Id.*)
[17] (Churchill Aff., Dkt. No. 41-1 at 11:3–4.)
[18] (Dkt. Nos. 34, 35.)

entitled to judgment as a matter of law."[19] Material facts are those that may affect the outcome of the case.[20] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[21] "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor."[22] A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."[23]

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."[24] In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.[25] If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.[26]

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.[27] To establish the existence of a factual

---

[19] Fed.R.Civ.P. 56(a).

[20] See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[21] See id.

[22] *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir.2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir.1999)).

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[24] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

[25] See *Celotex*, 477 U.S. at 323–24.

[26] See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

[27] See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[28] In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.[29] Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.[30]

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether mere is a genuine issue for trial.[31] The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."[32] But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.[33]

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."[34] "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"[35] The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."[36]

---

[28] *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir.1987).

[29] *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

[30][30] *See Celotex,* 477 U.S. at 324.

[31] *See Anderson,* 477 U.S. at 249.

[32] *Id.* at 255.

[33] *See id.* at 249–50.

[34] *Orr v. Bank of Am., NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002).

[35] *Id.* (quoting Fed. R. Evid. 901(a)).

[36] *Id.*

"In summary judgment, documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."[37]

> A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. ... Ordinarily, this would have to be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a "true and correct copy." ... *Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.*[38]

Here, none of the deposition transcripts submitted by either party includes a signed reporter's certification. The certification pages are attached, but none is signed. Thus, the Court must disregard all of the depositions as unauthenticated.

### B. Country's Motion for Summary Judgment

#### 1. Breach of Contract

Under Nevada law, breach of contract has three elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach.[39] The basic rule is that contract damages are measured by the injured party's expectation interest.[40] "Expectation damages attempt to place the plaintiff in the position that he or she would have occupied if the contract had been performed or if the promise had been kept."[41]

Country's tender of the $250,000 UIM policy limit renders this claim moot because it made Sloan whole under the Policy's UIM provisions. Country performed under the Policy by tendering the $250,000. In the event of provable injuries caused by an uninsured motorist Sloan

---

[37] *Id.* at 773–74 (internal quotation marks and citation omitted).

[38] *Id.* at 774 (internal quotation marks and citations omitted) (emphasis added).

[39] *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 919–20 (D.Nev.2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev.1865)).

[40] Restatement (Second) of Contracts § 347 (1981).

[41] *Dynalectric Co. of Nev., Inc. v. Clark & Sullivan Constructors, Inc.*, 255 P.3d 286, 289 (Nev. 2011) (citing Restatement (Second) of Contracts § 344(a) (1981)).

expected to receive $250,000 under the Policy, which is exactly what she received. She therefore has no further expectation damages. To the extent Sloan argues that the manner in which Country performed violated the spirit of the Policy, or otherwise frustrated her efforts to secure Country's performance, that may be a claim for bad faith rather than breach of contract.

Accordingly, the Court grants summary judgment in Country's favor on this claim.

### 2. Bad Faith

#### a. Legal Standard

The "special relationship" between insurer and insured gives rise to an action in tort if the insurer breaches the implied covenant of good faith and fair dealing.[42] As to this relationship, the Nevada Supreme Court "has refused to adopt a standard where an insurance company must place the insured's interests over the company's interests."[43] But "the nature of the relationship requires that the insurer adequately protect the insured's interest. . . . [A]t a minimum, an insurer must *equally* consider the insured's interests and its own."[44]

"Bad faith is the absence of a reasonable basis for denying benefits . . . and the defendant's knowledge or reckless disregard for the lack of a reasonable basis for denying the claim."[45] More succinctly, "[b]ad faith is established where the insurer acts unreasonably and with knowledge there is no reasonable basis for its conduct."[46] Thus, a bad faith claim has both an objective element and a subjective element. Accordingly, "if the insurer's actions resulted

---

[42] *Ins. Co. of the W. v. Gibson Tile Co., Inc.*, 122 Nev. 455, 461–62 (2006) ("Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only 'in rare and exceptional cases' when there is a special relationship between the victim and tortfeasor. A special relationship is 'characterized by elements of public interest, adhesion, and fiduciary responsibility.' Examples of special relationships include those between insurers and insureds[.]").

[43] *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 3111 (2009).

[44] *Id.* (emphasis added).

[45] *Pioneer Chlor Alkali Co., Inc. v. Nat'l Fire Ins. Co. of Pittsburgh, Pa.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994).

[46] *Guar. Nat'l Ins. Co. v. Potter*, 112 Nev. 199, 206 (1996).

from an honest mistake, bad judgment or negligence, then the insurer is not liable under a bad-faith theory."[47]

An insured may institute a bad faith action against his or her insurer once the insured establishes "legal entitlement" to an uninsured or underinsured motorist policy and unreasonable conduct by the insurer concerning its obligations to the insureds.[48] "Legal entitlement" means that the "insured must be able to establish fault on the part of the uninsured motorist which gives rise to the damages and to prove the extent of those damages."[49] However, an insured is not required to obtain a judgment against the tortfeasor before he is entitled to receive proceeds under a UIM policy.[50] A plaintiff need not establish she is entitled to a directed verdict on the contractual claim to establish a prima facie bad faith claim.[51]

Assuming without deciding that Sloan has a legal entitlement to UIM benefits, the pertinent questions on summary judgment are whether there are genuine issues of fact as to whether (1) Country had a reasonable basis to offer $65,000 to Sloan; and (2) if not, whether Country knew of, or recklessly disregarded, the lack of a reasonable basis for that offer—i.e., whether Country purposefully undervalued Sloan's claim. Summary judgment is inappropriate where "relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of the insurer's conduct."[52] "Summary judgment is improper where material issues of fact that would support a jury finding of bad faith remain in dispute."[53]

An insurer's belief that the validity of an insured's claim is "fairly debatable" is a defense to a bad faith claim.[54] The existence of that subjective belief, however, is a question of fact for

---

[47] *Miller*, 125 Nev. at 317 (internal quotation marks and citations omitted).

[48] *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 795–96 (1993).

[49] *Id.* at 796 (internal quotation marks and citation omitted).

[50] *Id.*

[51] *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 1257 n.2 (1999).

[52] *United Fire Ins. Co. v. McClelland*, 105 Nev. 504, 511 (1989).

[53] 14 STEVEN PLITT ET AL., COUCH ON INSURANCE § 203:6 (3d ed. 2013).

[54] *Bartgis*, 114 Nev. at 1259.

the jury.[55] Consequently, "an insurer's own belief that a claim is fairly debatable is insufficient to support a finding that an insurer had a reasonable basis to deny coverage."[56]

### b. Application

In its motion, Country sufficiently demonstrates that Sloan has not supported either the subjective or objective element of bad faith. Thus, the burden shifted to Sloan to provide admissible evidence to support those elements. Sloan has failed to meet that burden.

Sloan argues that various allegations, supported by admissible evidence, create genuine issues of material fact to survive summary judgment. First, Sloan contends that Dr. Duke's mother used to work for Mastrangelo. Even if true, the possible import of this fact is minimal. There is no reason to suspect that the relationships among Dr. Duke, his mother, and Mastrangelo had any connection to Country's behavior concerning Sloan's claim.

Second, Sloan contends that Country decided to reject her claim before receiving the expert report from Dr. Duke. Although Country admits that it began evaluating Sloan's claim upon receiving the medical records attached to the January 17 demand letter (which is a rational course of action for an insurer), Sloan has no admissible evidence to support her allegation. The alleged Injury Review Worksheet is unauthenticated, as the Foy deposition upon which it relies for authentication is itself unauthenticated. Likewise, Bangay's and Silvestri's depositions are unauthenticated.

Third, Sloan posits that Drs. Burkhead and Muir documented that the Subject Accident caused Sloan's cervical injuries. However, the medical record for Dr. Burkhead which Sloan relies upon does not support this allegation.[57] Dr. Muir, though, did opine that the Subject Accident caused Sloan's cervical injuries.[58] The conflicting expert opinions as to causation—Dr.

---

[55] *Id.*; *accord Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1010 (9th Cir. 2004) (applying Arizona law).

[56] *Megallon v. Nat'l Cas. Co.*, No: 2: 08-CV-01497, 2010 WL 829227 (D. Nev. Mar. 4, 2010) (citing *Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 1258 (1998)).

[57] (Dkt. No. 41 at 5 (citing Dr. Burkhead Medical Record, Jan. 5, 2012, Dkt. No. 41-7 (no mention of causation)).)

[58] (Dkt. No. 41 at 5 (citing Dr. Muir Medical Record, Apr. 15, 2011, Dkt. No. 41-5).)

Muir's and Dr. Duke's—may have created a genuine issue of fact as to whether Sloan was entitled to recover under the Policy (which is now moot because Country paid), but the conflict of opinions alone does not support the objective or subjective elements of bad faith. Without more, no reasonable jury could determine (i) that Country's initial offer of $65,000 was objectively unreasonable; or (ii) assuming for the sake of argument that the $65,000 offer was objectively unreasonable, that Country knew—or recklessly disregarded—that the $65,000 offer had no reasonable basis.

Mere disagreement between experts does not rise to bad faith. In light of the conflicting expert reports, Sloan's claim was "fairly debatable." Therefore, as a matter of law, Country had an objectively reasonable basis to offer $65,000.[59] Without objective unreasonableness, there is no need to assess the subjective component of bad faith. Nonetheless, the Court notes that in the absence of any evidence indicating that Dr. Duke's report was so faulty as to be unreliable—and that Country was aware of or recklessly disregarded those faults—no reasonable jury could find that Country knew or recklessly disregarded that the $65,000 offer had no reasonable basis.

Fourth, Sloan asserts that Country attempted to bias Dr. Duke's expert opinion by letting him know that Bangay thought the case would likely be litigated, allowing defense counsel to help choose the expert, and telling Dr. Duke that Sloan apparently suffers injuries only when she is not at fault in an auto accident. There is no requirement that defense counsel abstain from helping select an expert. To the contrary, counsel on both sides presumably want experts with whom they have a good working relationship. The statement about Sloan's apparent predisposition to claim injuries only when she is not at fault was not a necessary addition to the engagement letter, but it is insufficient to create a genuine issue of fact as to either element of bad faith.[60]

---

[59] See Morgan v. Am. Family Mut. Ins. Co., 534 N.W.2d 92, 96–97 (Iowa 1995).

[60] In addition, Sullivan allegedly testified that Country's policy is to engage in neutral pre-litigation record reviews. His deposition is unauthenticated, however, and cannot be considered by the Court.

Finally, Sloan contends that Country ignored her contentions that its reliance on Dr. Duke's expert report was reckless. Country apparently did ignore those contentions, but that ignorance is not reckless per se. The deposition testimony which allegedly establishes Country's preference for experts who have physically examined the claimant is unauthenticated. The requirement for equal consideration of the insured's and the insurer's interests does not mandate that the insurer prioritize the insured's expert, even if the insured's expert performed an in-person examination of the claimant. If it did, defense experts would be a wasted expense and plaintiffs would almost always, if not always, prevail.

In short, Sloan did not submit sufficient admissible evidence to create a genuine issue of material fact as to either the subjective or objective elements of bad faith. The Court thus grants summary judgment in Country's favor on this claim.[61]

### 3. Nevada Unfair Claims Practices Act — NRS § 686A.310

In relevant part, the Nevada Unfair Claims Practices Act provides:

> 1. Engaging in any of the following activities is considered to be an unfair practice:
>
> . . . .
>
> (f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.
>
> . . . .
>
> (n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.
>
> . . . .
>
> 2. In addition to any rights or remedies available to the Commissioner, an insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice.[62]

---

[61] FED. R. CIV. P. 56(a); see Anderson, 477 U.S. at 249–50.
[62] NRS § 686A.310.

Subsection 2 provides a private right of action for any violations of the Act. There need not be a pattern of violative behavior to support a private lawsuit; one violation is sufficient.[63]

Sloan has failed to submit evidence for, let alone allege, any damages resulting from the alleged unfair claims practices. In her response brief, Sloan had the opportunity to rebut Country's argument that she had not alleged any damages. Yet Sloan essentially repeated the allegations from the Complaint. The lack of damages alone dooms this claim. Therefore, summary judgment is granted in Country's favor on this claim.

### 4. Punitive Damages

In the absence of any claims upon which punitive damages could be based, the Court must grant summary judgment in Country's favor on Sloan's request for punitive damages.

### C. Sloan's Motion for Summary Judgment

In accord with the above, the Court denies Sloan's motion for summary judgment on her Nevada Unfair Claims Practices Act claim.

## III. CONCLUSION

The Court GRANTS Country's motion for summary judgment (Dkt. No. 35) and DENIES Sloan's motion for summary judgment (Dkt. No. 34). The Clerk of Court shall enter judgment in Country's favor.

DATED this 15th day of May, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[63] *Hart v. Prudential Prop. & Cas. Co.*, 848 F. Supp. 900, 903 (D. Nev. 1994) ("[A]n insurer [is] in violation of the statute for engaging in a single enumerated unfair act.").